IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES SPENCE | : |
| Plaintiff | : |
| v | :   Civil Action No. WDQ-06-2684 |
| KATHLEEN GREEN, WARDEN, *et al.* | : |
| Defendants | : |

o0o

**MEMORANDUM**

Pending in the above-captioned civil rights case are Defendants' Motions to Dismiss or for Summary Judgment. Paper Nos. 17 and 19. Although Plaintiff was advised of his right to file a Response in Opposition and of the consequences of failing to do so, he has not filed anything further in this case. For the reasons set forth below, the motions shall be granted.

Background

Plaintiff alleges that he injured his back when he fell during a seizure that occurred on September 26, 2006. Paper No. 1 at p. 5. He states he went to the infirmary on September 28, 2006, where he was examined and told he had a bruise on his back and that medical staff could do nothing for him. *Id*. In his amended complaint, Plaintiff claims that he has a seizure disorder and cannot take penicillin. Paper No. 5 at p. 2. He states he was given penicillin on November 9, 2006 and his condition requires assignment to a bottom bunk. He claims he injured his back during a fall from a top bunk while having a seizure on October 29, 2006. *Id*. He alleges that other inmates who are not medically trained are improperly delegated the duty of picking Plaintiff up, restraining him and transporting him to the infirmary after he has a seizure. *Id*. Plaintiff claims that when he was brought to the infirmary after his fall from the top bunk, he was told by medical staff that he could not receive any medical care for the injuries he sustained. *Id*. Plaintiff further alleges that the

practice of permitting inmates who are not qualified to give emergency medical care is unconstitutional. *Id*. In addition, he complains that no wheelchairs or stretchers are kept in the housing units of the prison for purposes of transporting sick or injured inmates to the medical unit.

<u>Standard of Review</u>

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment

2

with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

<u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act ["PLRA"] generally requires prisoners to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532

(2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations.

"[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005). Defendants Greene, Burkhard and Baucom, hereinafter "Correctional Defendants", are alleged to have provided inadequate facilities to insure Plaintiff is safely housed in the prison and failed to provided safe means for transporting him to the infirmary when required. Paper No. 5. Correctional Defendants admit Plaintiff filed a request for administrative remedy in which he blamed a seizure he had on May 11, 2006, on lack of attention from correctional officers in the housing unit. Paper No. 19 at p. 6. Plaintiff was instructed to resubmit the administrative complaint because it contained more than one issue and he did not do so. *Id*. at Ex. 3. Moreover, the issues presented in the administrative complaint did not concern Plaintiff's bed assignment or the means by which he is transported to the infirmary. *Id*. Correctional Defendants have properly raised the exhaustion issue, but Plaintiff has failed to respond. Paper No. 19 at p. 5. Having produced no evidence to refute the claim that he has not exhausted administrative remedies, Plaintiff has failed to establish that the merits of his claims against Correctional Defendants may be considered by this Court. The claims must therefore be dismissed. The remaining claims regarding the quality of medical attention received from medical staff are addressed below.

Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by

statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). To state an Eighth Amendment claim for denial of medical care. Plaintiff must demonstrate that the actions of Defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively Plaintiff was suffering from a serious medical need and that subjectively, the prison or health care staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, Defendants may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F.

5

3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

Defendants Ward, Hixon and Brown, hereinafter the Medical Defendants, provide records indicating that Plaintiff has a seizure disorder and he is allergic to penicillin. They note Plaintiff has had no infections during the period of time relevant to this case and therefore received no prescribed antibiotics. Paper No. 17 at Ex. A, p. 2. There is no evidence to support Plaintiff's claim that he received penicillin, or that he suffered actual harm from any drugs he received.

In addition, there is no notation that Plaintiff ever fell from a top bunk bed. Plaintiff suffered a seizure on November 9, 2006, and was discovered by staff, face down on the floor of his cell. *Id*. at Ex. B, p. 9. According to Plaintiff's cell mate, he was helped down to the floor at the onset of his seizure and did not fall to the floor. *Id*. Although there was no evidence that Plaintiff was ever harmed by being assigned to a top bunk, Dr. Behane wrote a medical order for Plaintiff's assignment to a bottom bunk. *Id*. at Ex. A. Records submitted by Correctional Defendants indicate that Plaintiff was assigned to a bottom bunk most of the time. Paper No. 19 at Ex. 1. To the extent that the medical order for a bottom bunk was not observed by correctional staff on occasion, there is no evidence that any harm was caused to Plaintiff by that oversight. Further, there is no evidence that Plaintiff was ever refused medical treatment for either his seizure disorder or an injury caused by

6

a fall. Plaintiff was brought to the medical unit because he appeared to be having a seizure and he was admitted for observation. Paper No. 17 at Ex. B, pp. 9– 14. Plaintiff attempted to leave the infirmary observation area against medical advice, but was persuaded by staff to stay. *Id*. at pp. 9, 10 and 13. Plaintiff is provided the anti-seizure medications Neurontin and Dilantin for management of his disorder. *Id*. at Ex. A, p. 3. There is no evidence that Plaintiff has been denied his medications on a regular basis.

As to the claim that the prison is not properly staffed with persons trained in emergency medical care, the Medical Defendants state that Plaintiff is transported to the infirmary as he describes, but the inmates who transport him are supervised by correctional and medical staff.[1] Paper No. 17 at Ex. A, p. 3. Each time a prisoner needs transportation to the infirmary for medical care a stretcher is dispatched to the housing unit and the prisoner is brought to the medical unit accompanied by correctional and medical staff. *Id*., *see also* Paper No. 19 at Ex. 2. Plaintiff has suffered no injury as a result of being transported to the medical unit by other inmates.

## Conclusion

Plaintiff has failed to establish that he exhausted available administrative remedies with respect to claims raised against the Correctional Defendants. Plaintiff's claims against the Medical Defendants are unsupported by any evidence that they have been deliberately indifferent to his serious medical needs. Accordingly, all Defendants are entitled to summary judgment, which shall be granted by separate order which follows.

---

[1] Warden Green states in her declaration that folding stretchers are kept in all housing units for use in transporting medically compromised inmates to the medical unit. Paper No. 19 at Ex. 2. Wheelchairs are only kept in the segregation and special needs units but are available to other housing units upon demand. *Id*. In addition, she states that motorized John Deere "Gators" are available to transport inmates for medical attention. *Id*.

<u>May 22, 2007</u>                                                         <u>        /s/                    </u>
Date                                                                         William D. Quarles, Jr.
                                                                             United States District Judge